**JONES, GUARDIANSHIP, In re**

**JONES v JONES**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3008. Decided Sept. 27, 1939.

. Angus Holmes, Columbus, for appellant.

Willis H. Liggett, Columbus, and Robert G. Morton, for appellee.

**OPINION**

By HORNBECK, PJ.

This is an appeal from an order of the Probate Court refusing to set aside an appointment of a guardian for the appellant, Clarence M. Jones.

In 1936 Mary M. Jones, wife of Clarence M. Jones, filed an application with the Probate Court of Franklin County for the appointment of a guardian for appellant and thereafter on October 2, 1936, a guardian was appointed and qualified and was so acting at the time of the proceedings under consideration on this appeal.

In 1935 in Probate Court, Franklin County, the appellant designated Norman E. Knisely and Ruth Knisely (now Ruth Knisely Kessler) his heirs at law and their residence was given as Franklin County where they resided at the time of the application for appointment of a guardian. The designation of said heirs at law was made under §10507-4, GC, and a full record of the proceedings was set forth in the Probate Court as provided in said section.

In the guardianship proceedings, neither Norman Knisely nor Ruth Knisely Kessler was notified of the time and place of the hearing on the application for appointment. It appears that, although the appellant was the husband of Mary M. Jones, the applicant for appointment of a guardian for him, she had no actual knowledge of his designation of heirs at law.

In the fall of 1938 appellant applied for an order of the Probate Court ter-

minating the guardianship of the person and estate of appellant on the ground that the appointment was improperly made. This application was overruled and from this action of the Probate Court this appeal is prosecuted.

Four grounds of error are assigned, all of which may be disposed of upon consideration of the general question whether or not the appointment of a guardian for appellant was invalid.

It is stipulated that the designated heirs at law were not notified of the time and place of the hearing on the application for the appointment of a guardian of appellant. It is the claim of appellant that by virtue of his designation of heirs at law, said designees were in the status of his "known next of kin" and entitled to notice under §10507-4, GC. Appellees deny that the designees were "next of kin" of appellant and urge further that if they were such next of kin they were not "known next of kin" and that a failure to notify them was not a violation of the terms of §10507-4 GC, and finally that the appellant has not the capacity to maintain this appeal.

A determination of the one claim asserted by the appellant will dispose of the controlling question and we will, therefore, not consider the other two propositions advanced by the appellees.

The appeal requires particular consideration of two Sections of the General Code, 10507-4 and 10503-12. §10507-4, GC, relating to notice required upon the application for appointment of a guardian, in so far as germane to our question provides,

"No guardian of the person, or of the estate, or of both, shall be appointed until at least three days after the Probate Court has caused written notice, setting forth the time and place of the hearing to be served upon the following persons:

(a) * * *

(b) In the appointment of the guardian of an incompetent, * * *.

(1) * * *

(2) Upon the known next of kin of such person for whom appointment is sought, known to reside in the County in which application is made."

Sec. 10503-12, GC provides for the designation of an heir at law,

"A person of sound mind and memory may appear before the Probate Judge of his County, and * * * file a written declaration, * * * declaring that, * * * he * * * did designate and appoint another, * * *, to stand toward him in the relationship of an heir at law in the event of his or her death. If satisfied that such declarant is of sound mind and memory and free from restraint the Judge thereupon shall enter that fact upon his journal and make a complete record of such proceedings. Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could if a child born in lawful wedlock. The rules of inheritance will be the same, between him and the relations by blood of the declarant, as if so born; * * *."

Appellant asserts that "next of kin" does not mean blood relatives but means those who would take under the Statutes of Descent and Distribution and relies on the emphasized portion of §10503-12, GC, and cites Steele, Admr. v Kurtz, 28 Oh St 191; Armstrong v Grandin, 39 Oh St 368; Godfrey et v Epple et, 100 Oh St 447, and Cochrel v Robison, 113 Oh St 526. Appellees insist that "next of kin" means the nearest in kin or the nearest of blood and cites 29 Cyc 1044; Clayton v Drake. 17 Oh St 367; Theobald, et v Fugman, 64 Oh St 473.

We are of opinion that the true construction of "next of kin" as found in §10507-4, GC, is not exactly as contended by either of the parties. The effect of a designation under §10503-12, GC, is specifically set out in the language of the section, namely, that the designee shall stand in the relation of an "heir at law in the event of his or her death." If the added language. "in the event of his or her death" was not

in the section the designation of an heir at law would indicate that this status would only arise upon the death of the declarer because one has no heirs while he lives. But the statute is made more definite when the words "in the event of his or her death" are added. The relationship created only attends when and if the declarer dies.

But it is asserted that the section further provides that "Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock". The section is a part of the chapter of the Code devoted to descent and distribution which relates to the devolution of one's real and personal property by the law at his death. The language following "Thenceforward" means that for all purposes of descent and distribution the designee shall upon the death of the declarant stand in the same relation as a child born in lawful wedlock. §10507-4 does not, during the lifetime of the parties to the declaration, create a status of parent and child. This section is to be distinguished from §10512-19, GC, which defines the effect of adoption on the parties thereto. This latter section does create the status of parent and child during the lifetime of both, the adopter and adopted, together with the mutual obligations and responsibilities attendant on that relationship. In probability an adopted child would answer the description of "next of kin" as employed in §10507-4, (b)-2, GC.

If "for all purposes" as employed in §10507-4, GC, contemplated that the relationship of parent and child attended from the date of the designation of an heir at law then the declarant would be chargeable with the obligation of care, education and support of the designees and in certain situations, liable in damages for their torts.

In Steele, Admr. v Kurtz, supra, it was held that in an action under the statute to recover damages for wrongful death the surviving husband of the intestate, who left no children, was within the meaning of the section under which the action was instituted the "next of kin" of the deceased. Godfrey et v Epple et, supra, also holds that "nearest of kin" as employed in the will thereunder construction included such as would inherit under the statute of Descent and Distribution. Armstrong v Grandin, supra, is of the same general tenor and effect as the other cases cited. All of these adjudications are effective as supporting the claim that "next of kin" may not always be restricted to blood relatives. They would likewise be cogent to support the theory that the designated "heirs at law" of appellant were his "next of kin" if appellant was dead. Cochrel v Robison, supra, defined the rights of a designated heir at law upon the death of the declarant and is of no value in fixing the status of the parties to the declaration during their lifetime.

The designated heirs at law of appellant were not at the time of the hearing of the application of the guardianship proceedings "next of kin of the person for whom appointment of guardian was sought" and it was not necessary that they be served with written notice of the time and place of hearing of the application for the appointment of a guardian.

The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.

**SEEDS v WESTERN & SOUTHERN LIFE INSURANCE COMPANY**

**SEEDS v SLOVENIAN MUTUAL BENEFIT ASSOCIATION**

**SEEDS v FIRST CATHOLIC SLOVAK UNION**

**SEEDS v BROTHERHOOD OF RAILWAY TRAINMEN**

Ohio Appeals, 2nd Dist, Franklin Co.

Nos. 3055, 3056, 3057, 3058.
Decided October 18, 1939.

502

John E. Todd, Columbus, for plaintiff-appellant and for the motion.

Vorys, Sater, Seymour & Pease, Columbus, for The Western & Southern Life Insurance Co., defendant-appellee.

Francis M. Surtz, and Franklin Rubrecht, Columbus, for Slovenian Mutual Benefit Ass'n., defendant-appellee.

Davis & Young; Chas. A. Chapla, Cleveland, for First Catholic Slovac Union, defendant-appellee.

W. A. Eudle, and Pretzman & Dillon, Columbus, for Brotherhood of Railway Trainmen Ins. Dept., defendant-appellee.

## OPINION

By HORNBECK, PJ.

We consider appeals on questions of law in each of the above entitled cases. The question presented is the same in all cases. The averments of the petition in case No. 3055 are typical of all the cases and we therefore discuss this case only.

This is a taxpayer's suit claimed to be brought on behalf of the State of Ohio, and all taxpayers therein. The defendant is a domestic insurance company and subject to the payment of certain franchise taxes, which, it is averred, are delinquent and have remained so for more than thirty days; that the taxes are due and owing to the State of Ohio, and that the officers of the State whose duty it is to collect the taxes have neglected to do so. To the petition a general demurrer was interposed on two grounds: that the facts do not constitute a cause of action and that the plaintiff has not legal capacity to maintain the suit. The demurrer was sustained and plaintiff, desiring to plead no further, judgment was entered against him for costs. To this action the appeal is directed.

The assignments of error are general to the effect that the court erred in sustaining the demurrer. It will be observed that the action proceeds upon the claimed right of the plaintiff in·a taxpayer's suit on behalf of the State to require the defendant company to pay delinquent taxes because the public officer charged with the collection of said taxes has failed to observe a duty enjoined upon him by statute. It was apparent upon oral presentation that if the defendants were required to answer, many of the averments of facts would be denied which upon demurrer must be accepted as true.

Counsel for plaintiff asserts that after the delinquent taxes have been certified to the Tax Commission by the process prescribed by law the Code provides that such taxes may be recovered in the name of the State and that suit may be brought in the Court of Common Pleas of Franklin County, Ohio. Attention is directed to the fact that this provision is not mandatory but permissive. It further appears, however, that the Attorney General, on request of the Commission, shall institute such action as is contemplated to be brought in the name of the State. From this it is urged that although it is the obligation of the Attorney General to institute the action contemplated upon request, that, if request be not made, still the right to institute the action exists in the name of the State and that the taxpayer herein answers the description of a party who had the right to begin the action.

We grant that the statute, §5414-18, GC, defining the manner in which the action to recover the delinquent taxes may be instituted fixing the venue and naming the officer to prosecute the suit, namely, the Attorney General, is only effective when and if the Tax Commission has requested the Attorney General to begin action. Although the Tax Commisson is not in mandatory form required to certify the taxes to the Attorney General for collection, we have no doubt that continued refusal so to do without sufficient reason would be the basis for an action commanding it to so certify.

The §5414-18, GC, is the one and only one which makes provision for legal action intended to compel the payment of the delinquent taxes. Counsel for plaintiff concedes that he could not have maintained the action at common law, that there is no statute in Ohio specifically and directly authorizing the same and that there is no authority of our court of last resort approving any such form of procedure. As we understand it, there is only left to the plaintiff the claim that there is constitutional authority over and beyond the statutory right.

The constitutional provision upon which is predicated authority of the plaintiff to institute the action is **Art. I, Sec. 16, Ohio Constitution:**

"All courts shall be open, and every person, having an injury done him, his land, goods, person or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the State in such Courts and in such manner as may be provided by law."

It is the "due course of law" provision upon which plaintiff relies. It is conceded that the last sentence in the section is not self-executing. Insofar as the present action is concerned it has been executed by the proviso that the Attorney General shall in the name of the State sue to collect the delinquent taxes. This is the due process of

law which is set up. The plaintiff is protected in his rights by the Attorney General who in his representative capacity acts for him. This form of representation of the individual by a designated public official is well recognized in our procedure. That the statutory authority in the Attorney General to sue for the taxes due the State is exclusive seems logical as no express provision for, or recognition of the right of another to sue is to be found in this case.

In the sections of the Code authorizing taxpayers' suits to recover moneys due the counties in one instance and municipalities in another, §§2922 and 4314, GC., the right to first institute the action is accorded the Prosecuting Attorney and the City Solicitor respectively, and it is only after he fails upon written request of a taxpayer to do so that the taxpayer may proceed. In the situation presented in this case there is no authority of statute for the taxpayer to proceed when and if the Attorney General fails or refuses to do so.

The public policy of the legislation becomes pertinent as relates to the claim that the plaintiff derives his authority from the due course of law clause of our State Constitution. We know of no instance, none is called to our attention and independent research finds none where a taxpayer's suit has been instituted for the purpose of making direct collection of taxes due the State from a delinquent taxpayer. This is not conclusive that such right does not exist but it is persuasive. It may well be that such procedure is not sanctioned because it would result in confusion and would not be conductive to orderly collection of taxes.

We have examined the cases cited by counsel for appellant and have given them consideration. In our judgment they do not require discussion or analysis because they are not supporting authority for the right of the plaintiff to maintain his action. No case has been cited from any jurisdiction wherein such a suit as is here planted has been entertained in any court. Coun-

sel for appellant filed an original brief in which it was suggested that another and more complete brief would be tendered but we do not find it among the papers, therefore assume that all that is desired to be presented by the court is found to be in the original brief.

Decided Oct. 30, 1939.

